656 P.2d 1238

Virginia GRANGER, Plaintiff-Appellant,

v.

H. Kern WISNER, M.D.,
Defendant-Appellee,

and

Lutheran Hospitals and Home Society of America, Inc., a foreign corporation, d/b/a Mesa Lutheran Hospital, Defendant.

No. 15846.

Supreme Court of Arizona,
In Division.

Dec. 17, 1982.

---

Robert J. Stephan, Jr., Phoenix, and Irwin L. Schroeder, San Diego, Cal., for plaintiff-appellant.

Jones, Teilborg, Sanders, Haga & Parks by Frank A. Parks, Phoenix, for defendant-appellee H. Kern Wisner, M.D.

FELDMAN, Justice.

This is an action for damages for personal injuries which plaintiff alleged she sustained as a result of the negligence of the defendant. Plaintiff appeals from a jury verdict and judgment in favor of the defendant and from an order denying a motion for a new trial. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Ariz.R.Civ.App.P. 19(e), 17A A.R.S.

On December 21, 1973, plaintiff consulted the defendant, a plastic surgeon, concerning cosmetic surgery. The defendant examined the plaintiff on that occasion and found that she would benefit cosmetically from plastic surgery. On January 11, 1974, plaintiff underwent surgery. Postoperative complications arose, however. On examination on January 21, 1974, defendant noticed sloughing of skin on both of plaintiff's cheeks. This was the result of blood clotting under the cheeks and resultant tissue breakdown. As a consequence of the sloughing, plaintiff suffered permanent facial scarring.

Because of the severe scarring on her face, plaintiff contacted an attorney to investigate a possible malpractice action against defendant. This attorney retained a second attorney to help evaluate the case. The second lawyer contacted Boyd Burkhardt, M.D., and asked him to consult by evaluating the medical records and information from the plaintiff. Dr. Burkhardt's review resulted in an opinion that there had been no malpractice. Dr. Burkhardt was paid $50.00 for this evaluation.

At this same time, the plaintiff filed a malpractice action against Dr. Wisner and Mesa Lutheran Hospital.[1] The complaint alleged that the defendant negligently examined, operated on the plaintiff, and failed to inform her of the risks of the operation. This negligence was alleged to have caused plaintiff's scarring and damages.

By some means not disclosed in the record, counsel for the defendant learned of the consultation between Dr. Burkhardt and plaintiff's counsel. When the plaintiff was deposed in April of 1976, it became clear that defense counsel knew of the earlier consultation. Several months prior to trial, defense counsel contacted Dr. Burkhardt and inquired whether he would be willing to testify on behalf of Dr. Wisner. Dr. Burkhardt agreed to do so.

At the trial in 1979, the plaintiff was represented by a new attorney. The defendant listed Dr. Burkhardt as an expert witness on the pretrial stipulation; however, plaintiff made no objection at that time. Plaintiff did not raise an objection to the expert until the third day of trial, the day Dr. Burkhardt was scheduled to testify. At that time, the plaintiff asked the court to preclude all testimony from Dr. Burkhardt. The basis of the objection was twofold: (1) Dr. Burkhardt had been an agent of plaintiff's counsel so that his proposed testimony was protected by the attorney-client privilege; and (2) allowing Dr. Burkhardt to testify would violate the purpose

behind discovery Rule 26(b)(4)(B), Ariz.R. Civ.P., 16 A.R.S.

The trial court denied plaintiff's motion and permitted Dr. Burkhardt to testify in defendant's case in chief.

The only issue raised in this appeal is whether the trial court erred in allowing Dr. Burkhardt to testify as an expert witness for the defense. We conclude that the trial court did not err and affirm.

ATTORNEY-CLIENT PRIVILEGE

Plaintiff argues that Dr. Burkhardt was retained as an expert by her attorney to evaluate the merits of her case and that he was thus an agent of the attorney and the plaintiff so that his testimony was protected by the attorney-client privilege. A.R.S. § 12–2234. This statute provides:

> In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment. An attorney's secretary, stenographer or clerk shall not, without consent of his employer, be examined concerning any fact the knowledge of which was acquired in such capacity.

■ The purpose of the attorney-client privilege is to encourage a client to confide in his or her attorney all the information necessary in order that the attorney may provide effective legal representation. *State v. Alexander,* 108 Ariz. 556, 568, 503 P.2d 777, 789 (1972); 1 M. Udall & J. Livermore, Arizona Practice, *Law of Evidence* § 74, 137–38 (2d ed. 1982). In order to effectuate this purpose, the privilege protects only confidential communications between a client and his or her attorney. *State v. Alexander, supra;* 1 M. Udall & J. Livermore, *supra* § 74, at 141. In this regard, the statute protects "communication[s]" from the client and "advice" to the client. It does not extend to facts which are not part of the communication between

[1]. Mesa Lutheran Hospital filed a motion for summary judgment, which was granted. This appeal does not involve that motion.

lawyer and client. Thus, the fact that a client has consulted an attorney, the identity of the client, and the dates and number of visits to the attorney are normally outside the scope and purpose of the privilege. *State v. Alexander, supra* (counsel could testify that former client had been convicted of felonies during prior representation); *Aritex Land Co. v. Baker,* 14 Ariz.App. 266, 482 P.2d 875 (1971) (attorney could testify as to his authority to execute certain documents for client); *Liew v. Breen,* 640 F.2d 1046 (9th Cir.1981) (identity of client); 1 M. Udall & J. Livermore, *supra.*

■ Nor does the privilege apply to information or facts acquired by the attorney or the attorney's agents from non-client sources. *See Dean v. Superior Court,* 84 Ariz. 104, 110, 324 P.2d 764, 768 (1958). Thus, the privilege does not prevent a party from calling an adversary's expert to testify and examining the expert about his or her opinions and the observations, knowledge, information, and theories on which the opinions are based. *State v. Donovan,* 57 Cal.2d 346, 369 P.2d 1, 19 Cal.Rptr. 473 (1962); *Town of Thomaston v. Ives,* 156 Conn. 166, 239 A.2d 515 (1968); *State v. Steinkraus,* 76 N.M. 617, 417 P.2d 431 (1966); *cf. South Carolina State Highway Department v. Booker,* 260 S.C. 245, 195 S.E.2d 615 (1973) (discovery); *State ex rel. Reynolds v. Circuit Court for Waukesha County,* 15 Wis.2d 311, 112 N.W.2d 686 (1961) (discovery).

■ In this case, Dr. Burkhardt was not questioned about and did not testify to any confidential communication he may have received from or given to the plaintiff or her previous counsel.[2] Dr. Burkhardt's testimony was based upon his education, training, experience and a review of the records supplied to him by counsel for the defendant. The mere fact that the plaintiff first retained Dr. Burkhardt to evaluate the case does not thereafter render the expert in-

competent on the grounds of privilege to testify for the defendant. *People v. Speck,* 41 Ill.2d 177, 200, 242 N.E.2d 208, 221 (1968). The assertion that Dr. Burkhardt's testimony was privileged is therefore without merit.

## RULE 26(b)(4)(B)

Plaintiff's second argument is based on Rule 26(b)(4)(B), which governs the discovery of non-witness experts. Plaintiff argues that Dr. Burkhardt was retained by her counsel solely to examine her medical records;[3] it was not intended that he be called as a witness for any purpose. Plaintiff contends that in such a case, Rule 26(b)(4)(B) confers discovery immunity with regard to Dr. Burkhardt absent a showing of exceptional circumstances. Because Dr. Burkhardt was protected from discovery, plaintiff argues that the order allowing him to testify for the defendant circumvented the purpose underlying Rule 26(b)(4)(B) and was therefore an abuse of discretion.

Rule 26(b)(4)(B) provides:

[T]he scope of discovery is as follows:

  . . . .

(4) *Trial preparation: Experts.*

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

  . . . .

(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and *who is not expected to be called as a witness at trial,* only . . . upon a showing of exceptional circumstances under which it is impracticable for the party

---

**2.** We do not imply by this that if such communications had been made they would be within the privilege. *But see City and County of San Francisco v. Superior Court,* 37 Cal.2d 227, 231 P.2d 26 (1951), *questioned in* Friedenthal, *Dis-*

*covery and Use of an Adverse Party's Expert Information,* 14 Stan.L.Rev. 455, 462–69 (1962).

**3.** Dr. Burkhardt did not provide any medical treatment to the plaintiff.

seeking discovery to obtain facts or opinions on the same subject by other means.

(Emphasis supplied.)

The advisory committee notes concerning the 1970 amendments to Rule 26(b)(4) indicate that the structure of the rule was largely developed around the doctrine of unfairness. Subsection (B) was designed to protect against the danger that one party will use another party's consulting expert to prepare his or her own case. Thus, discovery of a non-witness expert is limited to "exceptional circumstances." Fed.R.Civ.P. 26 advisory committee note; *Ager v. Jane C. Stormont Hospital & Training School for Nurses,* 622 F.2d 496, 502 (10th Cir.1980). The rule has been interpreted to prevent even the discovery of the identity of the non-testimonial expert. *Ager v. Jane C. Stormont Hospital & Training School for Nurses, supra.*

We recognize that Rule 26(b)(4)(B) deals with the ability of a party to discover information about or from an adversary's non-witness expert consultants. The rule does not address itself to the admissibility at trial of the testimony of such an expert which is elicited by the opponent. Further, the rules of discovery provide no express basis for the suppression of such testimony.

■ We also recognize, however, that trial courts are vested with wide discretion concerning discovery, *State ex rel. Babbitt v. Arnold,* 26 Ariz.App. 333, 334, 548 P.2d 426, 427 (1976), and the ability to impose sanctions for a party's violation of the discovery rules, *DeElena v. Southern Pacific Co.,* 121 Ariz. 563, 568, 592 P.2d 759, 764 (1979); Ariz.R.Civ.P. 37. This discretion allows trial courts to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. *Campbell Industries v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir.1980); *Halverson v. Campbell Soup Co.,* 374 F.2d 810, 812 (7th Cir.1967); *Clark v. Pennsylvania R.R. Co.,* 328 F.2d 591, 594–95 (2d Cir.1964). In this regard, a court may exclude testimony or evidence when the use of the evidence is in bad faith or would unfairly prejudice an opposing party,

even though, as here, no express rule confers such power. *Campbell Industries v. M/V Gemini, supra; Carver v. Salt River Valley Water Users' Association,* 104 Ariz. 513, 515–17, 456 P.2d 371, 373–75 (1969); *Sequoia Manufacturing Co. v. Halec Construction Co.,* 117 Ariz. 11, 18–19, 570 P.2d 782, 789–90 (App.1977).

■ Thus, for purposes of this opinion, we assume that in the case of a flagrant violation of the discovery process, in order to avoid circumventing the purpose of the Rules, a proper sanction could be the exclusion at trial of the "poisoned" fruits of the violation even though no rule expressly provides for such a sanction. *Campbell Industries v. M/V Gemini, supra* (order upheld excluding testimony of expert who had been contacted ex parte by adversary's counsel in violation of Rule 26(b)(4)). Unlike the situation in *Campbell Industries, supra,* however, the record in this case does not establish that the contact with the non-testimonial expert was the result of improper conduct on the part of the defendant or his counsel.

The plaintiff argues further that the trial court erred by letting Dr. Burkhardt testify because of the danger of prejudice which is present when a party's non-trial expert is allowed to testify for the opposition. In this case, the trial court allowed the expert to testify with the restriction that defense counsel could not mention the fact of the previous consultation with plaintiff's counsel. This restriction was proper because the fact of the prior consultation for the plaintiff was irrelevant to the issue of negligence. See *Arkansas State Highway Commission v. First Pyramid Life Insurance Co. of America,* 265 Ark. 417, 420, 579 S.W.2d 587, 589 (1979); *State ex rel. Smith v. Wilkinson-Snowden-McGehee, Inc.,* 571 S.W.2d 842, 843 (Tenn.Ct.App.1978); *State v. Biggers,* 360 S.W.2d 516, 517 (Tex.1962). The admission of this evidence on direct examination would only serve to unfairly prejudice the plaintiff. Jurors unfamiliar with the role of counsel in adversary proceedings might well assume that plaintiff's counsel had suppressed evidence which he had an

obligation to offer. Such a reaction could destroy counsel's credibility in the eyes of the jury. *State v. Biggers, supra.* The trial court recognized this danger and properly limited the testimony.

The plaintiff contends, however, that even with the restriction imposed by the trial court, plaintiff was still in a difficult position when cross-examining the expert. If the plaintiff sought to attack the expert's qualifications or credentials, he might well have some concern that the defendant would attempt to rehabilitate the witness by showing that plaintiff's counsel had thought well enough of the witness to consult him on this very case. Arguably, that prior consultation might be an admission that plaintiff believed the witness to be qualified. *State v. Biggers,* 360 S.W.2d at 517–18.[4] Further, he might be put in the position of having to impeach the expert's testimony by showing it differed in some material way from statements made in the report that the same consultant had made to plaintiff's counsel. Other types of examination might unintentionally open the door to mention of the prior consultation. Cross-examination is a difficult art which is not made easier when counsel must perform it on a tightrope.

While the risk of undue prejudice to a party in the position of plaintiff in this case is substantial and may make it proper in some situations for the court to entirely preclude the witness, Ariz.R.Evid. 403, we do not believe that the trial court's action in the case at bench was at all unreasonable.

Plaintiff had numerous opportunities to raise an objection to the use of this expert. Although counsel for the plaintiff did not serve interrogatories on the defendant regarding the defendant's trial experts, the pretrial stipulation listed Dr. Burkhardt as an expert witness for the defense and was signed by plaintiff's counsel without any objection being stated. Even after Dr. Burkhardt was mentioned in defendant's opening statement, plaintiff remained silent. It was not until the third day of trial, when Dr. Burkhardt was scheduled to testify, that plaintiff raised the objection to his testimony. At that point it would have been impossible for the defendant to retain another expert.

Given the late presentation of the objection, the lack of impropriety by the defense and the restriction imposed by the court to obviate or minimize the danger of prejudice to the plaintiff, we believe the trial court's ruling was eminently proper and was the best way to handle the problem under the circumstances. We find, therefore, that the trial court did not abuse its discretion in allowing the witness to testify. The judgment is affirmed.

HAYS and CAMERON, JJ., concur.

---

4. We do not hold that this would be proper rehabilitation. We only point out that trial counsel might well worry about the possibility that it would be so used.